UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------X
UNITED STATES OF AMERICA,

                                    <u>MEMORANDUM AND ORDER</u>
          -against-                     05-CR-0822(DRH)
                                        05-CR-0834(DRH)
MARK V. INGRAM,

                    Defendant.
------------------------------X
A P P E A R A N C E S :

For the Government:
     Benton J. Campbell
     United States Attorney
     610 Federal Plaza
     Central Islip, New York 11722
        By: Richard Donoghue, A.U.S.A.

For Defendant:
     Mark V. Ingram, Pro Se
     5205 Northwood Drive
     Grand Blanc. Michigan 48439

     Ray L. Colon, Esq.
     233 Broadway - 5th Floor
     New York, New York 10279

HURLEY, Senior District Judge

          On November 30, 2005, Mark V. Ingram ("defendant" or

"Ingram") waived indictment in the Eastern District of New York

and pleaded guilty before Magistrate Judge Lindsay to a one count

information under docket 05-CR-832 charging him with laundering

funds represented to be narcotics proceeds in violation of 18

U.S.C. § 1956(a)(3)(B).  On the same date, he also entered guilty

pleas before Judge Lindsay to Counts 4 and 16 of the Superseding

Indictment returned in the Southern District of Florida charging

him with bank fraud and money laundering in violation of 18

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------X
UNITED STATES OF AMERICA,

                                        <u>MEMORANDUM AND ORDER</u>
          -against-                        05-CR-0822(DRH)
                                           05-CR-0834(DRH)
MARK V. INGRAM,

                    Defendant.
------------------------------X
A P P E A R A N C E S :

For the Government:
     Benton J. Campbell
     United States Attorney
     610 Federal Plaza
     Central Islip, New York 11722
        By: Richard Donoghue, A.U.S.A.

For Defendant:
     Mark V. Ingram, Pro Se
     5205 Northwood Drive
     Grand Blanc. Michigan 48439

     Ray L. Colon, Esq.
     233 Broadway - 5th Floor
     New York, New York 10279

HURLEY, Senior District Judge

          On November 30, 2005, Mark V. Ingram ("defendant" or

"Ingram") waived indictment in the Eastern District of New York

and pleaded guilty before Magistrate Judge Lindsay to a one count

information under docket 05-CR-832 charging him with laundering

funds represented to be narcotics proceeds in violation of 18

U.S.C. § 1956(a)(3)(B).  On the same date, he also entered guilty

pleas before Judge Lindsay to Counts 4 and 16 of the Superseding

Indictment returned in the Southern District of Florida charging

him with bank fraud and money laundering in violation of 18

U.S.C. §§ 1344 and 1957.[1]  The Florida accusatory instrument

bears the docket number 05-CR-834.

Following his guilty pleas, defendant, although

represented by counsel,[2] filed the following pro se submissions:

(1) "Notice of Expressed Administrator Hearing," "Expressed

Administrative Hearing," and "Affidavit of Fact in Support of

Petition in the Nature of an Expressed Administrative Hearing,"

all dated in early May 2007, (2) "Notice of Political Default"

dated May 28, 2007, and (3) "Affidavit of Negative Averment on

Lack of Territorial Jurisdiction" dated October 24, 2007.  None

of those pro se motions was addressed on the merits by the Court

given Ingram's then represented status and the absence of any

claim that such representation was inadequate.

During a status conference on May 2, 2008, Mr. Ryan's

application to be relieved as counsel was granted with the

consent of Ingram.  During that same Court appearance, Ingram

indicated that he would like to proceed pro se with respect to

---

[1]  The Florida proceeding was transferred to the Eastern
District of New York for purposes of plea and sentence pursuant
to Rule 20 of the Federal Rules of Criminal Procedure.

[2]  At the time of the November 30, 2005 pleas of guilty,
defendant was represented by Randi Chavis, Esq. of the Federal
Defender Division.  In mid-October 2006, a Notice of Appearance
was filed by Uzmah Saghir, Esq. who thereupon replaced Ms. Chavis
as counsel.  Attorney Saghir's later application to withdraw as
counsel was granted on August 17, 2007, whereupon Joseph Ryan
Esq. was appointed as his attorney.

U.S.C. §§ 1344 and 1957.[1]  The Florida accusatory instrument
bears the docket number 05-CR-834.

Following his guilty pleas, defendant, although
represented by counsel,[2] filed the following pro se submissions:
(1) "Notice of Expressed Administrator Hearing," "Expressed
Administrative Hearing," and "Affidavit of Fact in Support of
Petition in the Nature of an Expressed Administrative Hearing,"
all dated in early May 2007, (2) "Notice of Political Default"
dated May 28, 2007, and (3) "Affidavit of Negative Averment on
Lack of Territorial Jurisdiction" dated October 24, 2007.  None
of those pro se motions was addressed on the merits by the Court
given Ingram's then represented status and the absence of any
claim that such representation was inadequate.

During a status conference on May 2, 2008, Mr. Ryan's
application to be relieved as counsel was granted with the
consent of Ingram.  During that same Court appearance, Ingram
indicated that he would like to proceed pro se with respect to

---

[1]  The Florida proceeding was transferred to the Eastern
District of New York for purposes of plea and sentence pursuant
to Rule 20 of the Federal Rules of Criminal Procedure.

[2]  At the time of the November 30, 2005 pleas of guilty,
defendant was represented by Randi Chavis, Esq. of the Federal
Defender Division.  In mid-October 2006, a Notice of Appearance
was filed by Uzmah Saghir, Esq. who thereupon replaced Ms. Chavis
as counsel.  Attorney Saghir's later application to withdraw as
counsel was granted on August 17, 2007, whereupon Joseph Ryan
Esq. was appointed as his attorney.

his earlier filed motions but would accept an assignment of counsel should those motions be denied and he be required to proceed to sentence. After a fairly lengthy discussion, the Court granted defendant's application to proceed pro se, and a briefing schedule was established. The government's letter brief in opposition was timely filed on May 6, 2008, but defendant failed to submit a Reply by the date designated.

On May 28, 2008, defendant explained that he still wanted to submit a Reply and asked for additional time to do so. However, given, inter alia, that over two years had passed since the defendant had entered his guilty pleas and the seemingly spurious nature of his pro se submissions, his request was granted, but subject to the following conditions intended to prevent further delay, which conditions were fully explained to the defendant at that time:

1.    Immediately following the Court's receipt of defendant's Reply, I would peruse all the submissions and decide the applications;

2.    Upon doing so, the parties would be notified forthwith as to whether the defendant's motions were granted or denied, with the Court's reasons for that determination to be given via a bench decision on July 18, 2008; and

3.    If defendant's motion was denied, both sides should be prepared to proceed to sentence on the July 18th date.

Defendant's Reply, entitled "Affidavit in the Nature of a Motion to Dismiss for Lack of Jurisdiction or, in the

his earlier filed motions but would accept an assignment of counsel should those motions be denied and he be required to proceed to sentence. After a fairly lengthy discussion, the Court granted defendant's application to proceed pro se, and a briefing schedule was established. The government's letter brief in opposition was timely filed on May 6, 2008, but defendant failed to submit a Reply by the date designated.

On May 28, 2008, defendant explained that he still wanted to submit a Reply and asked for additional time to do so. However, given, inter alia, that over two years had passed since the defendant had entered his guilty pleas and the seemingly spurious nature of his pro se submissions, his request was granted, but subject to the following conditions intended to prevent further delay, which conditions were fully explained to the defendant at that time:

1. Immediately following the Court's receipt of defendant's Reply, I would peruse all the submissions and decide the applications;

2. Upon doing so, the parties would be notified forthwith as to whether the defendant's motions were granted or denied, with the Court's reasons for that determination to be given via a bench decision on July 18, 2008; and

3. If defendant's motion was denied, both sides should be prepared to proceed to sentence on the July 18th date.

Defendant's Reply, entitled "Affidavit in the Nature of a Motion to Dismiss for Lack of Jurisdiction or, in the

Alternative, to Allow Accused Discovery F. R. Cr. P 12(b)(3) pursuant to 5 U.S.C. 556(d)," was filed on June 11, 2008. On June 16, 2008, consistent with the procedure discussed on May 28, 2008, a Memorandum and Order was filed indicating that the Court rejected defendant's applications as devoid of merit, and reiterating that the reasons for that decision would be furnished on July 18, 2008 to be immediately followed by imposition of sentence. Again, consistent with the discussions on May 2 and May 28, 2008 an attorney, Ray L. Colon, Esq., was appointed to represent Ingram for purposes of sentence.

The July 18, 2008 date, however, as well as the adjourned date of August 8, 2008 have now passed without the Court having had the opportunity to provide the rationale for its June 16, 2008 decision denying the relief requested by defendant, and without the Court imposing sentencing. The first adjournment was necessitated by defense counsel being engaged in another trial, and the second because the defendant went to a hospital emergency room on the eve of his scheduled court appearance complaining of chest pains. Therefore, rather than delay matters further and while the reasons for my June 16, 2008 decision are fresh in my mind, those reasons will be provided in this opinion rather than orally immediately prior to the imposition of sentence.

<u>DISCUSSION</u>

Alternative, to Allow Accused Discovery F. R. Cr. P 12(b)(3) pursuant to 5 U.S.C. 556(d)," was filed on June 11, 2008. On June 16, 2008, consistent with the procedure discussed on May 28, 2008, a Memorandum and Order was filed indicating that the Court rejected defendant's applications as devoid of merit, and reiterating that the reasons for that decision would be furnished on July 18, 2008 to be immediately followed by imposition of sentence. Again, consistent with the discussions on May 2 and May 28, 2008 an attorney, Ray L. Colon, Esq., was appointed to represent Ingram for purposes of sentence.

The July 18, 2008 date, however, as well as the adjourned date of August 8, 2008 have now passed without the Court having had the opportunity to provide the rationale for its June 16, 2008 decision denying the relief requested by defendant, and without the Court imposing sentencing. The first adjournment was necessitated by defense counsel being engaged in another trial, and the second because the defendant went to a hospital emergency room on the eve of his scheduled court appearance complaining of chest pains. Therefore, rather than delay matters further and while the reasons for my June 16, 2008 decision are fresh in my mind, those reasons will be provided in this opinion rather than orally immediately prior to the imposition of sentence.

<u>DISCUSSION</u>

Defendant's submissions are not a model of clarity. However, it is clear that defendant implicitly seeks the vacatur of his previously entered guilty pleas, coupled with an order dismissing the concomitant counts, as well as the other counts in the pending Florida indictment. In urging that result, he maintains that this Court lacks both in personam and subject matter jurisdiction. These claims will be discussed seriatim.

1.  The Court has Jurisdiction Over the Defendant's Person

At page 3 of the document entitled "Expressed Administrative Hearing," defendant states:

> Of course, under the separation of powers doctrine it is well established that I as head-of-state and the law making authority for the United States of America and our system of law. And my system of law, which is known as the private law/supreme law and that system of law, is only applicable to my fellow heads-of-state and me. Whereas the politically disconnected, public law can only apply to creatures for which this system of law was, is and will be created. When examining this alleged system of law for example, by calling itself Title 18/21 and finding absolutely no grant of authority for its application to anything. Especially in the private law, then I we am and are therefore absolutely immune by certified diplomatic status from any and all of its claims, demands, jeopardy's and penalties.[3]

To the extent the above excerpt is meant to convey the notion that defendant is somehow insulated from the commands of

---

[3] Unless otherwise noted, I have quoted defendant's submissions in this opinion verbatim, but absent the use of the term "sic."

Defendant's submissions are not a model of clarity. However, it is clear that defendant implicitly seeks the vacatur of his previously entered guilty pleas, coupled with an order dismissing the concomitant counts, as well as the other counts in the pending Florida indictment. In urging that result, he maintains that this Court lacks both in personam and subject matter jurisdiction. These claims will be discussed seriatim.

1.   <u>The Court has Jurisdiction Over the Defendant's Person</u>

At page 3 of the document entitled "Expressed Administrative Hearing," defendant states:

> Of course, under the separation of powers doctrine it is well established that I as head-of-state and the law making authority for the United States of America and our system of law. And my system of law, which is known as the private law/supreme law and that system of law, is only applicable to my fellow heads-of-state and me. Whereas the politically disconnected, public law can only apply to creatures for which this system of law was, is and will be created. When examining this alleged system of law for example, by calling itself Title 18/21 and finding absolutely no grant of authority for its application to anything. Especially in the private law, then I we am and are therefore absolutely immune by certified diplomatic status from any and all of its claims, demands, jeopardy's and penalties.[3]

To the extent the above excerpt is meant to convey the notion that defendant is somehow insulated from the commands of

---

[3]   Unless otherwise noted, I have quoted defendant's submissions in this opinion verbatim, but absent the use of the term "sic."

federal criminal law, it is rejected. Nothing in that excerpt, or elsewhere in defendant's submissions, permits the conclusion that defendant, who was born "in the Republic of Illinois state, on the 23rd day of August 1965" and has resided in that state "until the present," is not subject to the laws of the United States. (Aff. of Fact in Supp. of Pet. in the Nature of Expressed Administrative Hr'g at 1.) See Khattab El v. United States Justice Dep't, Civ. A. No. 86-6863, 1988 WL 5117, at *1 (E.D. Pa. Jan. 22, 1988)("[P]laintiff affirms that he is a citizen of the United States. Assuming that to be true, unquestionably, plaintiff is subject to the laws of the United States."). And surely simple conclusory assertions that one is a "head-of-state" with "certified diplomatic status" does not make it so. See United States v. Kilgore, No. 07-4025, 2007 WL 4022840, at *1 (4th Cir. Nov. 15, 2007) ("To the extent that Kilgore argues . . . that he is a 'Foreign Nation (not a person) who rules autonomously and [is] not subject to any entity or jurisdiction anywhere,' his claim is patently meritless.").

In sum, defendant is subject to the jurisdiction of this Court.

2.    The Court has Subject Matter Jurisdiction Over the Crimes
      to Which Defendant Pleaded Guilty on November 30, 2005[4]

---

[4]    The guilty plea allocutions taken by Judge Lindsay on November 30, 2005 to the three earlier identified charges were accepted by me by Order dated August 17, 2007. The discussion in the text under this caption will be confined solely to those

federal criminal law, it is rejected. Nothing in that excerpt, or elsewhere in defendant's submissions, permits the conclusion that defendant, who was born "in the Republic of Illinois state, on the 23rd day of August 1965" and has resided in that state "until the present," is not subject to the laws of the United States. (Aff. of Fact in Supp. of Pet. in the Nature of Expressed Administrative Hr'g at 1.) See Khattab El v. United States Justice Dep't, Civ. A. No. 86-6863, 1988 WL 5117, at *1 (E.D. Pa. Jan. 22, 1988)("[P]laintiff affirms that he is a citizen of the United States. Assuming that to be true, unquestionably, plaintiff is subject to the laws of the United States."). And surely simple conclusory assertions that one is a "head-of-state" with "certified diplomatic status" does not make it so. See United States v. Kilgore, No. 07-4025, 2007 WL 4022840, at *1 (4th Cir. Nov. 15, 2007) ("To the extent that Kilgore argues . . . that he is a 'Foreign Nation (not a person) who rules autonomously and [is] not subject to any entity or jurisdiction anywhere,' his claim is patently meritless.").

In sum, defendant is subject to the jurisdiction of this Court.

2.  The Court has Subject Matter Jurisdiction Over the Crimes to Which Defendant Pleaded Guilty on November 30, 2005[4]

_____

[4] The guilty plea allocutions taken by Judge Lindsay on November 30, 2005 to the three earlier identified charges were accepted by me by Order dated August 17, 2007. The discussion in the text under this caption will be confined solely to those

Subject matter jurisdiction refers to a "court's statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for Better Env't, 523 U.S. 83, 89 (1998).

Defendant maintains that this Court lacks the power to adjudicate the charges against him. As best I am able to glean from the moving papers, the bases for his position are that (a) the subject information and indictment are fundamentally flawed for failure to allege that the criminal conduct charged had an affect on interstate commerce, and (b) the charged crimes did not occur on federally owned land. Neither argument has merit.

### (a) The Money Laundering and Bank Fraud
### Counts are Properly Alleged

As noted earlier, defendant pled guilty under information 05-CR-832 to laundering funds represented to be narcotics proceeds in violation of 18 U.S.C. § 1956(a)(3)(B), and to bank fraud and money laundering in violation of 18 U.S.C. §§ 1344 and 1957 under indictment 05-CR-834.

Defendant maintains that "this indictment, under 18/or 21 U.S.C. violation fails to allege a [nexus] between accused conduct and interstate commerce [and, accordingly] this court must hold that a lack of commerce allegation in the indictment precludes it from considering whether a conviction under 18/or 21

three charges because if they stand, defendant's objections to the remaining charges — if such objections exist and that is unclear — are rendered academic for present purposes.

Subject matter jurisdiction refers to a "court's statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for Better Env't, 523 U.S. 83, 89 (1998).

Defendant maintains that this Court lacks the power to adjudicate the charges against him. As best I am able to glean from the moving papers, the bases for his position are that (a) the subject information and indictment are fundamentally flawed for failure to allege that the criminal conduct charged had an affect on interstate commerce, and (b) the charged crimes did not occur on federally owned land. Neither argument has merit.

### (a) The Money Laundering and Bank Fraud Counts are Properly Alleged

As noted earlier, defendant pled guilty under information 05-CR-832 to laundering funds represented to be narcotics proceeds in violation of 18 U.S.C. § 1956(a)(3)(B), and to bank fraud and money laundering in violation of 18 U.S.C. §§ 1344 and 1957 under indictment 05-CR-834.

Defendant maintains that "this indictment, under 18/or 21 U.S.C. violation fails to allege a [nexus] between accused conduct and interstate commerce [and, accordingly] this court must hold that a lack of commerce allegation in the indictment precludes it from considering whether a conviction under 18/or 21

_____

three charges because if they stand, defendant's objections to the remaining charges — if such objections exist and that is unclear — are rendered academic for present purposes.

U.S.C. VIOLATION can be sustained." (Aff. of Fact in Supp. of

Pet. in the Nature of an Expressed Administrative Hr'g at

unnumbered p. 10.) In other words, defendant urges that this

purported charging deficiency — viz. the absence of a claim that

the alleged conduct affected interstate commerce — renders what

has transpired thus far, including his guilty pleas, a nullity

and requires that the charges be dismissed.

However, as correctly noted by the government:

> The 18 U.S.C. § 1956(a)(3)(B) single count
> contained in the Eastern District of New York
> information alleged that the defendant "did
> knowingly and intentionally conduct and
> attempt to conduct financial transactions
> affecting interstate commerce." Similarly,
> the § 1957 count (Count Sixteen) in the
> Southern District of Florida Superseding
> Indictment alleged that the defendant "did
> knowingly engage in monetary transactions . .
> . in and affecting interstate commerce." As
> such, both of those counts specifically
> alleged an affect on interstate commerce.

(Gov't's May 6, 2008 Letter Br. in Opp'n at 10.)

Such being the case, defendant's argument as to the two

money laundering charges are rejected as being patently bogus.

Defendant's claim regarding the remaining charge to

which he pleaded guilty, that being bank fraud in violation of 18

U.S.C. § 1344, is similarly unavailing.

Count 4 of Indictment 05-CR-834 alleges that the

Defendant defrauded two "federally insured financial

institutions" by depositing "a stolen official First Union

U.S.C. VIOLATION can be sustained." (Aff. of Fact in Supp. of Pet. in the Nature of an Expressed Administrative Hr'g at unnumbered p. 10.) In other words, defendant urges that this purported charging deficiency — viz. the absence of a claim that the alleged conduct affected interstate commerce — renders what has transpired thus far, including his guilty pleas, a nullity and requires that the charges be dismissed.

However, as correctly noted by the government:

> The 18 U.S.C. § 1956(a)(3)(B) single count contained in the Eastern District of New York information alleged that the defendant "did knowingly and intentionally conduct and attempt to conduct financial transactions affecting interstate commerce." Similarly, the § 1957 count (Count Sixteen) in the Southern District of Florida Superseding Indictment alleged that the defendant "did knowingly engage in monetary transactions . . . in and affecting interstate commerce." As such, both of those counts specifically alleged an affect on interstate commerce.

(Gov't's May 6, 2008 Letter Br. in Opp'n at 10.)

Such being the case, defendant's argument as to the two money laundering charges are rejected as being patently bogus.

Defendant's claim regarding the remaining charge to which he pleaded guilty, that being bank fraud in violation of 18 U.S.C. § 1344, is similarly unavailing.

Count 4 of Indictment 05-CR-834 alleges that the Defendant defrauded two "federally insured financial institutions" by depositing "a stolen official First Union

National Bank check [for $130,000], made payable to the defendant, into [his] bank account at Republic Bank in Weston, Florida." (Southern District of Florida Indictment 05-CR-834, ¶ 38.)

The fact that the bank fraud count does not allege an affect on interstate commerce is irrelevant. To prevail at trial, the government would be required to "prove that defendant '(1) engaged in a course of conduct designed to deceive a federally . . . insured financial institution into releasing property; and (2) possessed an intent to victimize the institution by exposing it to actual or potential loss.'" United States v. Crisci, 273 F.3d 235, 239-40 (2d Cir. 2001); see also 2A Kevin F. O'Malley, Jay E. Grenig and Hon. William C. Lee, Federal Jury Practice & Instructions, Criminal § 47.11 (5th ed. 2000)(listing the same essential elements of proof under § 1344 delineated in Crisci, but setting forth the requirement that the "financial institution was . . . then insured by the Federal Deposit Insurance Corporation" as a separate element). In sum, the government need not allege nor prove an affect on interstate commerce in prosecuting a Section 1344 case involving a federally insured financial institution. Clay v. United States, No. 97 C 751, 1997 WL 573402, *5 (N.D. Ill. Sept. 11, 1997)("Clay contends that this Court lacked jurisdiction over his case because his indictment did not allege that his criminal conduct had 'a

National Bank check [for $130,000], made payable to the defendant, into [his] bank account at Republic Bank in Weston, Florida." (Southern District of Florida Indictment 05-CR-834, ¶ 38.)

The fact that the bank fraud count does not allege an affect on interstate commerce is irrelevant. To prevail at trial, the government would be required to "prove that defendant '(1) engaged in a course of conduct designed to deceive a federally . . . insured financial institution into releasing property; and (2) possessed an intent to victimize the institution by exposing it to actual or potential loss.'" <u>United States v. Crisci</u>, 273 F.3d 235, 239-40 (2d Cir. 2001); <u>see also</u> 2A Kevin F. O'Malley, Jay E. Grenig and Hon. William C. Lee, <u>Federal Jury Practice & Instructions, Criminal</u> § 47.11 (5th ed. 2000)(listing the same essential elements of proof under § 1344 delineated in <u>Crisci</u>, but setting forth the requirement that the "financial institution was . . . then insured by the Federal Deposit Insurance Corporation" as a separate element). In sum, the government need not allege nor prove an affect on interstate commerce in prosecuting a Section 1344 case involving a federally insured financial institution. <u>Clay v. United States</u>, No. 97 C 751, 1997 WL 573402, *5 (N.D. Ill. Sept. 11, 1997)("Clay contends that this Court lacked jurisdiction over his case because his indictment did not allege that his criminal conduct had 'a

substantial effect on interstate commerce.'. . . Clay

misinterprets the jurisdictional requirements of the criminal

statutes under which he was prosecuted. None of these statutes

has an independent jurisdictional nexus element that must be

alleged in addition to the criminal conduct itself. For example,

the Government's allegations that Clay attempted to defraud a

'federally-insured financial institution' are sufficient to

satisfy the jurisdictional requirements of the federal bank fraud

statute.") (citing 18 U.S.C. § 1344).

> (b) Federal Criminal Jurisdiction is not
> Limited to Geographic Areas "Owned"
> by the Federal Government

In defendant's "Affidavit of Fact in Support of

Petition and the Nature of an Expressed Administrative Hearing"

at unnumbered page 3, the following excerpt appears:

> Affiant, states, in criminal prosecutions,
> where the federal government is a moving
> party. It must not only establish ownership
> of the property which the crime(s) allegedly
> occurred, but they must also produce
> documentation that the state has ceded the
> jurisdiction of that property to them. . . .

Not surprisingly, no convincing authority has been

furnished for the remarkable proposition that unless the

government owns the land upon which an alleged federal offense

occurred, the offense is not prosecutable federally. Indeed, as

defendant acknowledges, "[a]s [he is] a part of the United States

of America, . . . [he] must conform to the law of the United

substantial effect on interstate commerce.'. . . Clay

misinterprets the jurisdictional requirements of the criminal

statutes under which he was prosecuted.  None of these statutes

has an independent jurisdictional nexus element that must be

alleged in addition to the criminal conduct itself.  For example,

the Government's allegations that Clay attempted to defraud a

'federally-insured financial institution' are sufficient to

satisfy the jurisdictional requirements of the federal bank fraud

statute.") (citing 18 U.S.C. § 1344).

> (b) Federal Criminal Jurisdiction is not
> Limited to Geographic Areas "Owned"
> by the Federal Government

In defendant's "Affidavit of Fact in Support of

Petition and the Nature of an Expressed Administrative Hearing"

at unnumbered page 3, the following excerpt appears:

> Affiant, states, in criminal prosecutions,
> where the federal government is a moving
> party.  It must not only establish ownership
> of the property which the crime(s) allegedly
> occurred, but they must also produce
> documentation that the state has ceded the
> jurisdiction of that property to them. . . .

Not surprisingly, no convincing authority has been

furnished for the remarkable proposition that unless the

government owns the land upon which an alleged federal offense

occurred, the offense is not prosecutable federally.  Indeed, as

defendant acknowledges, "[a]s [he is] a part of the United States

of America, . . . [he] must conform to the law of the United

States of America . . . ." (Notice of Expressed Administrative Hearing at 3), assuming the presence of some legitimate predicate for the assertion of federal authority. Money laundering and bank fraud charges under §§ 1956(a)(3)(B), 1957 and 1344 clearly meet that standard. See <u>United States v. Goodwin</u>, 141 F.3d 394, 399 (2d Cir. 1997)("[M]oney laundering is not only a commercial activity, but it '<u>substantially</u> affects <u>interstate</u> commerce.")(quoting <u>United States v. Lopez</u>, 514 U.S. 549, 560 (1995)); <u>United States v. Koh</u>, 199 F.3d 632, 638 (2d Cir. 1999)("Congress clearly intended to protect 'the financial integrity' of institutions in which it had a strong federal interest, including those that are 'federally created, controlled or insured.'").

In any event, defendant's federal "ownership" argument, as capsulized in the above quoted excerpt, is unsound and, therefore, rejected.

<u>CONCLUSION</u>

I have endeavored to specifically address each of the decipherable grounds urged in support of the relief requested except in those instances where the position advanced is obviously off target, such as the claim that "the acts of Congress . . . are applicable only in the District of Columbia." (Aff. of Fact in Supp. of Pet. in the Nature of an Expressed Administrative Hr'g at unnumbered p. 17.) And, with respect to

-11-

States of America . . . ." (Notice of Expressed Administrative Hearing at 3), assuming the presence of some legitimate predicate for the assertion of federal authority. Money laundering and bank fraud charges under §§ 1956(a)(3)(B), 1957 and 1344 clearly meet that standard. See <u>United States v. Goodwin</u>, 141 F.3d 394, 399 (2d Cir. 1997)("[M]oney laundering is not only a commercial activity, but it '<u>substantially</u> affects <u>interstate</u> commerce.")(quoting <u>United States v. Lopez</u>, 514 U.S. 549, 560 (1995)); <u>United States v. Koh</u>, 199 F.3d 632, 638 (2d Cir. 1999)("Congress clearly intended to protect 'the financial integrity' of institutions in which it had a strong federal interest, including those that are 'federally created, controlled or insured.'").

In any event, defendant's federal "ownership" argument, as capsulized in the above quoted excerpt, is unsound and, therefore, rejected.

CONCLUSION

I have endeavored to specifically address each of the decipherable grounds urged in support of the relief requested except in those instances where the position advanced is obviously off target, such as the claim that "the acts of Congress . . . are applicable only in the District of Columbia." (Aff. of Fact in Supp. of Pet. in the Nature of an Expressed Administrative Hr'g at unnumbered p. 17.) And, with respect to

defendant's assertion "that a law that has not been duly enacted into positive law is not a law of general applicability, and therefore, a person who does not comply with its provisions cannot be guilty of a crime" (<u>id.</u> at unnumbered p. 8), I find that argument to be unconvincing essentially for the reasons articulated by the government. (<u>See</u> Gov't's May 6, 2008 Letter Br. at 8-9.)

For the reasons indicated in this opinion, defendant's claim that this Court lacks jurisdiction over his person, and over the subject matter of the counts to which he has pled guilty, is rejected <u>in</u> <u>toto</u>.

SO ORDERED.

Dated: August 15, 2008
       Central Islip, New York


_____/S/_____
DENIS R. HURLEY, U.S.D.J.

defendant's assertion "that a law that has not been duly enacted into positive law is not a law of general applicability, and therefore, a person who does not comply with its provisions cannot be guilty of a crime" (<u>id.</u> at unnumbered p. 8), I find that argument to be unconvincing essentially for the reasons articulated by the government. (<u>See</u> Gov't's May 6, 2008 Letter Br. at 8-9.)

For the reasons indicated in this opinion, defendant's claim that this Court lacks jurisdiction over his person, and over the subject matter of the counts to which he has pled guilty, is rejected <u>in</u> <u>toto</u>.

SO ORDERED.

Dated: August 15, 2008
    Central Islip, New York

_____/S/_____
DENIS R. HURLEY, U.S.D.J.